**Akin Law Group PLLC**
Robert D. Salaman (RS 7487)
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
*Counsel for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CARMELO TORTORICI and                               Case No.
YOVANNY MADERA, *on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

               Plaintiffs,        **CLASS AND COLLECTIVE ACTION**
                                            **AMENDED COMPLAINT**

    -against-                                      **Jury Trial Demanded**

BUS-TEV, LLC d/b/a Early Morning Seafood and
ERIC TEVROW, in his individual capacity,

               Defendants.
-----------------------------------------------------------X

       Plaintiffs Carmelo Tortorici ("Tortorici") and Yovanny Madera ("Madera") (collectively,

"Plaintiffs") allege on behalf of themselves and others similarly situated, against Defendants

Bus-Tev, LLC d/b/a Early Morning Seafood ("EMS" or the "Company") and Eric Tevrow

("Tevrow") (collectively, "Defendants"), upon information and belief, as follows:

<u>NATURE OF THE CLAIMS</u>

1.   Tortorici was employed by EMS from 2013 to September 22, 2017 as a salesman, selling

    seafood to restaurants in New York.  In addition, Tortorici worked as a warehouse/office

    employee, delivery person, chauffeur driver for EMS employees and a labor relations

    specialist for the Company.  Defendants paid Tortorici a flat rate per week, no matter

    how many hours he worked.

2.   Madera was employed by EMS from 2012 to late 2016 as a warehouse/office employee,

cleaning fish and packing boxes.  Furthermore, Madera worked as a delivery person for EMS.  Defendants paid Madera a flat rate per week, no matter how many hours he worked.

3. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA") that they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime, (2) liquidated damages and (3) attorneys' fees and costs.

4. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL") that they and others similarly situated, are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid spread-of-hours premium, (3) statutory penalties for wage notice violations, (4) liquidated damages and (5) attorneys' fees and costs.

5. Additionally, Tortorici sets forth separate claims for: (1) a hostile work environment based on his sex under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), and (2) retaliation in violation of the NYLL.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because Plaintiff Madera resides in this district and because Defendants' business is located in this district.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201

and 2202.

## PARTIES

9.  Plaintiff Carmelo Tortorici ("Tortorici") is a resident of Bergen County, New Jersey.

10. Plaintiff Yovanny Madera ("Madera") is a resident of Bronx County, New York.

11. Defendant Bus-Tev, LLC d/b/a Early Morning Seafood ("EMS") was and is a domestic limited liability company organized under the laws of the State of New York., with a principal place of business located at 529 Worthen Street, Bronx New York 10474.

12. At all times relevant to this action, EMS has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.00.

13. Defendant Eric Tevrow ("Tevrow"), upon information and belief, was and is a resident of the State of New Jersey.

14. At all times relevant to this action, Tevrow was and is the Owner, President and Chief Executive Office of EMS.

15. Tevrow exercised control over the employment terms and conditions of the Plaintiffs, FLSA Collective Plaintiffs and Class Members.  Tevrow had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of the Plaintiffs, FLSA Collective Plaintiffs and Class Members.  At all times, employees could complain to Tervrow directly regarding any of the terms of their employment, and Tevrow would have the authority to effect any changes to the quality and terms of employees' employment.  Tevrow exercised functional control over the business and financial operations of EMS.

16. The acts of EMS charged in this Complaint were authorized, directed or accomplished by Tevrow individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of EMS's business.

17. At all relevant times, EMS was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and the regulations thereunder.

18. At all relevant times, the work performed by the Plaintiffs, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by the Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

19. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including warehouse/office workers, drivers, driver helper persons, delivery persons and salesmen, employed by the Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices and procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek. The claims of the Plaintiffs stated herein are essentially the same as those of the FLSA Collective Plaintiffs.

21. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail in English and Spanish for the last address known to Defendants.

### RULE 23 CLASS ALLEGATIONS – NEW YORK

22. Plaintiffs also bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including warehouse/office workers, drivers, driver helper persons, delivery persons and salesmen, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class period").

23. All said persons, including the Plaintiffs, are referred to herein as the "Class."  The Class members are readily ascertainable.  The number and identity of the Class members are determinable from the records of Defendants.  The hours assigned and worked, the positions held, and the rate of pay for each Class member are also determinable from the Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under F.R.C.P. Rule 23.

24. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants; upon information and belief, there are in excess of forty (40) Class Members.

25. The Plaintiffs' claims are typical of those claims, which could be alleged by any member

of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate action.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation, (ii) failing to pay spread of hours premium, (iii) failing to provide proper wage statements per requirements of the NYLL, and (iv) failing to provide proper wage and hour notices, at date of hiring and annually, per requirements of the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  The Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26. The Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  The Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.   Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or

6

impossible for the individual Class members to redress to wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of the individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for the Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28. Defendants and other employers throughout the state violate the NYLL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

29. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   (a)  Whether Defendants employed the Plaintiffs and Class members within the meaning of the NYLL;

   (b)  What are and were the policies, practices, programs, procedures, protocols and plans

of the Defendants regarding the types of work and labor for which the Defendants did not pay the Class members properly;

(c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Plaintiffs and Class members for their work;

(d)  Whether Defendants properly notified the Plaintiffs and Class members of their hourly rate and overtime rate;

(e)  Whether Defendants paid the Plaintiffs and Class members the proper overtime compensation under the NYLL

(f)  Whether Defendants paid the Plaintiffs and Class members the spread of hours premium as required by the NYLL;

(g)  Whether Defendants provided proper wage statements to the Plaintiffs and Class members per requirements of the NYLL; and

(h)  Whether Defendants provided proper wage and hour notices to the Plaintiffs and Class members, at date of hiring and annually, as required by the NYLL.

## STATEMENT OF FACTS

Wage Claims for Plaintiff Tortorici

30. Defendants are engaged in the business of selling and delivering seafood to business establishments including restaurants, in the New York tristate area.

31. From 2013 to September 22, 2017, Tortorici was employed on a full-time basis by the Defendants as a salesman, driver, office/warehouse worker, delivery person, chauffeur driver for EMS employees and Company labor relations specialist.

32. During Tortorici's employment with the Defendants, Tortorici worked in excess of forty (40) hours per week and ten (10) hours per day.

33. At minimum, Tortorici worked for EMS five days per week, Monday to Friday.  Tortorici
    also often worked on Saturdays.

34. Tortorici's hours at EMS varied, but were generally in excess of forty five (45) per week.

35. During Tortorici's employment by the Defendants, Tortorici was paid a flat amount per
    week for all hours worked.  No matter how many hours Tortorici worked in a week,
    Tortorici was paid the same amount.

36. Upon Tortorici's hire in 2013, Defendants paid Tortorici $1500.00 per week.

37. From approximately November 20, 2015 to February 17, 2017, Defendants paid Tortorici
    $1450.00 per week.

38. From approximately February 24, 2017 to March 17, 2017, Defendants paid Tortorici
    $350.00 per week.

39. From approximately March 24, 2017 to September 22, 2017, Defendants paid Tortorici
    $400.00 per week.

40. Tortorici was also, on occasion, paid a bonus (by way of commission), depending upon
    his sales for the week.

41. The Defendants did not provide a wage notice to Tortorici upon his hire; or annually.

42. Tortorici was employee of EMS.

43. Tevrow had Tortorici represent the Company at several unemployment hearings against
    former EMS employees.

44. As part of Tortorici's job responsibilities, Tortorici would work at the 529 Worthen
    Street, Bronx NY 10474 EMS office/warehouse.

45. Tevrow would require Tortorici to fill in for employees who were out of work at the EMS
    office/warehouse, such as Angelo Ruvio (EMS office employee), Juan and JoJo (EMS

drivers, last names currently uknown).

46. When Tortorici worked at the office/warehouse, Tevrow would typically require Tortorici to arrive at 10pm to open the facility.

47. On occasion, Tortorici would work until late in the afternoon, driving EMS employees home to West Orange, NJ, at the direction of Tevrow, after working a 16+ hour shift.

48. Although Tortorici worked over forty hours per week, Defendants never paid Tortorici at the required overtime premium rate.

49. Defendants purposely paid Tortorici a straight rate for all hours worked, including overtime hours, to circumvent payment of hourly overtime rates.

Wage Claims for Plaintiff Madera

50. From 2012 until late 2016, Madera was employed on a full-time basis by the Defendants as an office/warehouse employee, delivery person, packer and fish cleaner.

51. Madera worked for the Defendants at 529 Worthen Street, Bronx NY 10474.

52. During Madera's employment with the Defendants, Madera worked in excess of forty (40) hours per week.

53. Madera worked, at minimum, six days per week – Monday through Saturday for EMS. On occasion, Madera would also work on Sundays.

54. Madera would often work in excess of twelve (12) hours per day.

55. During Madera's employment by the Defendants, Madera was paid a flat amount per week for all hours worked.  No matter how many hours Madera worked in a week, Madera was paid the same amount.

56. For approximately the first four to five months of Madera's employment at EMS, the Defendants paid Madera $650.00 per week in cash.

57. For approximately the next year and a half of Madera's employment at EMS, the Defendants paid Madera $750.00 per week in cash.

58. For the last several years of Madera's employment at EMS, the Defendants paid Madera $641.00 by check and $200.00 by cash per week.

59. The Defendants did not provide Madera with a wage notice upon his hire; or annually.

60. The Defendants did not provide Madera with a proper wage statement with each payment he received.

61. Although the Plaintiffs, FLSA Collective Plaintiffs and Class members worked over forty hours per week, Defendants never paid them at the required overtime premium rate.

62. Plaintiffs, FLSA Collective Plaintiffs, and Class members had workdays that often exceeded 10 hours in length. Defendants never paid them the "spread of hours" premium as required by the NYLL.

63. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to the Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendants purposely paid all non-exempt employees a straight rate for all hours worked, including overtime hours, to circumvent payment of hourly overtime rates.

64. Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to the Plaintiffs, FLSA Collective Plaintiffs and Class members.

65. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to the Plaintiffs and Class members, in violation of the NYLL.

66. Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to the Plaintiffs and Class members, at the beginning of employment and annually thereafter, in violation of the NYLL.

67. The Plaintiffs retained Akin Law Group PLLC to represent the Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

NYSHRL and NYCHRL Hostile Work Environment Claims for Tortorici

68. During Tortorici's employment, the Defendants subjected Tortorici to numerous acts of sexual harassment and unlawful discrimination.

69. On numerous occasions, Tevrow made sexually inappropriate comments to Tortorici, which Tortorici found highly offensive for the workplace.

70. By way of example, at the Bronx EMS warehouse/office, Tevrow told Tortorici that Tevrow's wife does not want to have sex with him because she does not lubricate like she used to.

71. Tortorici explained to Tevrow that this was between Tevrow and his wife.

72. Unabated, Tevrow complained to Tortorici that it was hard for him (Tevrow) to have sex with his wife.

73. Tortorici was offended by Tevrow's remarks and told him on several occasions, That's between you and your wife.

74. On a separate occasion at Macao Trading Co restaurant, Tevrow told Tortorici that the hostess had the nicest tits he had ever seen.  Specifically, Tevrow asked Tortorici, "Can you believe that?"  Tortorici responded that they were at the restaurant for business.

75. Tevrow also told Tortorici that a friend of his wanted to set him up with hookers.

76. Tevrow also explained that when he was a chef, all the girls were over him.  Tevrow described to Tortorici how one night he grabbed one girl and "fucked" her in the bathroom, saying he "fucked the shit out of her."  Tortorici told Tevrow that he did not wish to hear about Tevrow's exploits.

77. In at least one instance, Tevrow asked Tortorici to suck his dick.

78. As a result of the Defendants' actions, Tortorici suffered severe emotional distress.

NYLL Retaliation Claim for Tortorici

79. In 2017, Tortorici complained to Tevrow that he was not being paid overtime.

80. Further, Tortorici complained to Tevrow that EMS was misclassifying him as an independent contractor.

81. Specifically, Tortorici asked Tevrow, "Why aren't you paying me the right way?" and "I need you to take taxes out of my paycheck."

82. In response, Tevrow explained to Tortorici that he did not want to pay for employee health or workers' compensation; and this was the way he had always employed people.

83. On September 22, 2017, Defendants terminated Tortorici's employment.

84. Tortorici was terminated in retaliation for complaining about being improperly paid.

**FIRST CAUSE OF ACTION**
**FLSA – UNPAID OVERTIME**
**(For All Plaintiffs, FLSA Collective Plaintiffs and the Class)**

85. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated

and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

87. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NYLL – UNPAID OVERTIME**
**(For All Plaintiffs, FLSA Collective Plaintiffs and the Class)**

89. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90. Defendants willfully violated the Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

91. Defendants' failure to pay overtime premium compensation caused the Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  The Plaintiffs and the Class Members are entitled to recover from the Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages,

reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### THIRD CAUSE OF ACTION
### NYLL – UNPAID SPREAD-OF-HOURS
**(For All Plaintiffs, FLSA Collective Plaintiffs and the Class)**

92. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93. Defendants willfully violated the Plaintiffs and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

94. Defendants' failure to pay spread-of hours compensation caused the Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  The Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NYLL – FAILURE TO PROVIDE WAGE STATEMENT
**(For All Plaintiffs, FLSA Collective Plaintiffs and the Class)**

95. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as

though fully set forth herein.

96. Defendants have willfully failed to supply the Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

97. Due to the Defendants' violations of the NYLL, the Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### FIFTH CAUSE OF ACTION
### <u>NYLL – RETALIATION</u>
#### (For Plaintiff Tortorici)

98. Plaintiff Tortorici repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect though fully set forth herein.

99. Tortorici was employee of EMS within the meaning of NYLL § 215.

100. Defendants are employees within the meaning of NYLL § 215.

101. While employed by the Defendants, Tortorici verbally complained to the Defendants about Defendants' practice, policy and procedure of not paying overtime and misclassifying his employment.

102.     Tortorici's verbal complaints to Defendants constitute protected activity under the

NYLL.

103.     Upon complaining to the Defendants about their unlawful employment practices,

Defendants retaliated against Tortorici by terminating his employment.

104.     A causal connection exists between Tortorici's employment to Defendants and

Defendants' decision to terminate Tortorici's employment.

105.     Defendants violated NYLL § 215 by retaliating against Tortorici for complaining

to Defendants about their unlawful employment practices, policies and procedures that

violate the NYLL.

## SIXTH CAUSE OF ACTION
## NYSHRL – HOSTILE WORK ENVIRONMENT
### (For Plaintiff Tortorici)

106.     Plaintiff Tortorici repeats and realleges each and every allegation of the preceding

paragraphs with the same force and effect and though fully set forth herein.

107.     By engaging in the foregoing conduct, Defendants violated Tortorici's rights

under the NYSHRL by subjecting Tortorici to an offensive and hostile work environment

because of his sex.

108.     As a direct and proximate result of Defendants' unlawful conduct, Tortorici has

suffered and continues to suffer harm for which he is entitled to an award of monetary

damages and other relief.

## SEVENTH CAUSE OF ACTION
## NYCHRL – HOSTILE WORK ENVIRONMENT
### (For Plaintiff Tortorici)

109.     Plaintiff Tortorici repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

110.     By engaging in the foregoing conduct, Defendants violated Tortorici's rights under the NYCHRL by subjecting Tortorici to an offensive and hostile work environment because of his sex.

111.     Tortorici was treated less well because of his sex.

112.     As a direct and proximate result of Defendants' unlawful conduct, Tortorici has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

e.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and supporting regulations;

g.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation and spread-of-hours pay pursuant to the NYLL and supporting regulations;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and "spread of hours" premium pursuant to the FLSA and NYLL;

i.  An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

j.  One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of the NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.  An award of prejudgment and post-judgment interest;

l.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

m.  An award of damages to Plaintiff Tortorici in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff Tortorici for all monetary and/or

economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

n.  An award of damages to Plaintiff Tortorici in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff Tortorici for all non-monetary and/or compensatory damages, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional and psychological pain and suffering, emotional and psychological distress and the physical manifestations caused; and

o.  Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: October 2, 2017
        New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

*/s/ Robert D. Salaman*
_____
Robert D. Salaman (RS 7487)
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
rob@akinlaws.com

*Counsel for Plaintiffs, FLSA Collective
Plaintiffs and the Class*