UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARMELO TORTORICI, EVARISTO MENDEZ and LUIS JIMINEZ, on behalf of themselves, FLSA Collective Plaintiffs and the Class,<br><br>          Plaintiffs,<br><br>   -against-<br><br>BUS-TEV, LLC d/b/a Early Morning Seafood and ERIC TEVROW, in his individual capacity,<br><br>          Defendants. | Case No.: 17-CV-07507 (RWS) (KHP)<br><br>**(Oral Argument Requested)** |

# REPY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200

*Attorneys for Defendants, Bus-Tev, LLC d/b/a Early Morning Seafood and Eric Tevrow*

*Of Counsel:*
  Derek Wolman
  Benjamin Noren

899858v.2

i

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ...................................................................................................... **ii**

**ARGUMENT** ................................................................................................................................. **3**

    POINT I    PLAINTIFF IS AN EXEMPT OUTSIDE SALESPERSON UNDER BOTH THE FLSA AND NYLL ...................................................................... 3

    POINT II    DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF .............. 6

    POINT III    PLAINTIFF WAS NOT SUBJECTED TO A HOSTILE WORK ENVIRONMENT ........................................................................................ 8

    POINT IV    DEFENDANTS DID NOT VIOLATE NYLL § 195 .................................. 11

**CONCLUSION** ........................................................................................................................... **12**

# **TABLE OF AUTHORITIES**

**Cases**

*Cortes v. City of New York*,
　700 F Supp 2d 474 (S.D.N.Y. 2010) .................................................................................... 10

*De Cintio v. Westchester County Med. Ctr.*,
　807 F.2d 304 (2d Cir. 1986) ................................................................................................. 11

*Dudley v. Hanzon Homecare Services, Inc.*,
　2018 WL 481884 (S.D.N.Y. 2018) ...................................................................................... 12

*Ehrbar v. Forest Hills Hosp.*,
　131 F.Supp.3d 5 (E.D.N.Y. 2015) ......................................................................................... 8

*El Sayed v. Hilton Hotels Corp.*,
　627 F.3d 931 (2d Cir. 2010) ............................................................................................... 6-7

*Fattoruso v. Hilton Grand Vacations Co.*,
　873 F.Supp.2d 569 (S.D.N.Y. 2012) ................................................................................ 9-10

*Golston-Green v. City of New York*,
　184 A.D.3d 24 (2d Dep't 2020) ............................................................................................. 9

*Grassel v. Dep't of Educ. of City of N.Y.*,
　2015 WL 5657343 (E.D.N.Y. 2015) ..................................................................................... 1

*Gregory v. Daly*,
　243 F.3d 687 (2d Cir. 2001) .................................................................................................. 8

*Jackson v. Fed. Express.*,
　766 F.3d 189 (2d Cir. 2014) .................................................................................................. 1

*Kaur v. New York City Health & Hosps. Corp.*,
　688 F. Supp. 2d 317 (S.D.N.Y. 2010) ................................................................................... 9

*Kovaco v. Rockbestos-Surprenant Cable Corp.*,
　834 F.3d 128 (2d Cir. 2016) .................................................................................................. 1

*Lennert–Gonzalez v. Delta Airlines, Inc.*,
　2013 WL 754710 (S.D.N.Y. 2013) ................................................................................. 10-11

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
　715 F.3d 102 (2d Cir. 2013) ................................................................................................ 10

*Mullins v. City of New York*,
   626 F.3d 47 (2d Cir. 2010) ........................................................................................................ 6

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 (1998) ................................................................................................................. 10

*Philpott v. SUNY*,
   805 Fed.Appx. 32 (2d Cir. 2020) ............................................................................................. 7

*Schwapp v. Town of Avon*,
   118 F.3d 106 (2d Cir.1997) ..................................................................................................... 9

*Sydney v. Time Warner Entertainment-Advance/Newhouse Partnership*,
   751 Fed.Appx. 90 (2d Cir. 2018) ............................................................................................. 5

*Taylor v. City of New York*,
   269 F. Supp. 2d 68 (E.D.N.Y. 2003) ....................................................................................... 1

*Thomas v. Atl. Express Corp.*,
   2009 WL 856993 (S.D.N.Y. 2009) .......................................................................................... 1

**Statutes**

NYLL § 195 ................................................................................................................................ 2, 11

NYLL 198(1-b) ............................................................................................................................. 11

899858v.2

This Reply Memorandum of Law is submitted by Davidoff Hutcher & Citron LLP, on behalf of Defendants EMS and Tevrow,[1] in further support of their motion pursuant to Fed. R. Civ. P. 56(a) for summary judgment and in opposition to Plaintiff's Memorandum of Law in Opposition ("Br." or "Opposition").

Plaintiff's Opposition fails to raise a triable issue of fact, and for the most part, completely ignores the arguments and case law cited by Defendants.[2] Instead, Plaintiff recites generalized legal standards, and, only by ignoring the evidence, issues conclusory statements that the standards have been met. However, even a cursory review of the undisputed facts completely rebuts Plaintiff's shallow arguments.

First, Plaintiff, by his Opposition, asks this Court to ignore his own admission that his primary duty (for EMS) was to sell fish and seafood, and instead believe that Plaintiff was actually employed as some combination of delivery truck driver, warehouse manager, personal chauffeur, and labor relations specialist. This Court should not take the bait. Even accepting, *arguendo*, Plaintiff's preposterous representation that he "filled in" for delivery drivers for four months out of the year, time alone is not dispositive. Even if it was, Plaintiff admitted (without qualification) that he sold seafood six days a week. Accordingly, over 50% of Plaintiff's time was spent performing exempt sales work.

---

[1] All capitalized terms have the meaning assigned to them in Defendants' Memorandum of Law in Support of its Motion for Summary Judgment [Dkt. No. 78].

[2] In [the Second] Circuit, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express.*, 766 F.3d 189, 198 (2d Cir. 2014)`; *accord Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (hostile work environment claims deemed abandoned where plaintiff "fail[ed] to argue that they should survive [defendant's] motion for summary judgment" while arguing against the motion as to his other claims); *Thomas v. Atl. Express Corp.*, 2009 WL 856993, at *2 (S.D.N.Y. 2009) (dismissing plaintiff's claims with prejudice where "[i]n his opposition, [the plaintiff] failed to respond to [defendant's] argument that his due process claim should be dismissed, and therefore that claim is deemed abandoned"); *Grassel v. Dep't of Educ. of City of N.Y.*, 2015 WL 5657343, at *9 (E.D.N.Y. 2015) ("When a party opposing summary judgment fails to respond to the moving party's argument on a claim, the Court may deem the claim abandoned"); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way").

Second, Plaintiff's Opposition fails to demonstrate (with evidence) that Defendants' reasons for terminating him (*i.e.,* poor performance and insubordination) were pretextual, as is his burden. Instead, Plaintiff speculates that he was actually terminated because he complained to Tevrow about unpaid wages for non-sales work, and being misclassified as a 1099. In making this argument, Plaintiff ignores the record, and specifically that (1) Plaintiff admittedly made those complaints numerous times over 5 years, and rather than being retaliated against, Plaintiff was awarded bonuses and pay increases; (2) in the nine months preceding Plaintiff's termination, there is a well-documented history of Tevrow's written complaints about Plaintiff's poor performance; and (3) it is undisputed that Plaintiff kicked Tevrow out of his car, and left him on the side of the West Side Highway, just two days before Plaintiff's termination. In response, Plaintiff ignores the fact that he left his boss on the West Side Highway, claiming that he could not have been terminated for insubordination because the September 22, 2017 termination email does not mention "insubordination." However, this is incorrect. The September 22, 2017 termination email mentions "the continuous static between" Plaintiff and Tevrow. Further, Plaintiff's argument that he could not have been terminated for poor performance, because it was actually the fault of EMS' substandard fish and burdensome credit terms, is a distraction, or in seafood parlance, a red herring.

Third, Plaintiff's Opposition fails to address the dispositive argument that his hostile workplace claim lacks any allegations or proof that his alleged mistreatment was based upon his gender. In opposing dismissal, Plaintiff completely ignores this essential element of the claim. Instead, Plaintiff simply recites the standard and conclusively claims it has been met, because he wouldn't have filed this action otherwise. This argument is clearly insufficient.

Fourth, without conceding the merit of Plaintiff's NYLL § 195 argument, if his reasoning

899858v.2

is adopted, the maximum he could recover from Defendants would be $2,500.

For the reasons stated below, Plaintiff cannot establish his claims as a matter of law and no material question of fact exists in this case. Accordingly, the Complaint should be dismissed in its entirety.

## ARGUMENT

## POINT I

### PLAINTIFF IS AN EXEMPT OUTSIDE SALESPERSON UNDER BOTH the FLSA and NYLL

Plaintiff's primary job was selling seafood, not driving a truck, not being a warehouse manager, not being a personal chauffeur for Tevrow, and not being a labor relations specialist. In fact, Plaintiff clearly identified his job and primary duty during his deposition:

> **Q:** Turning back to your employment at EMS, I think we discussed earlier that your job was as *vice president of sales*, right?
> **A:** Yes.
> **Q:** Okay.  And that job, is it correct that *your duties were primarily to sell fish and seafood* to customers as you had done in your previous jobs in the industry; is that right?
> **A:** Correct.[3]

In addition, Plaintiff testified that he sold fish and seafood six days a week for EMS.[4]  He described that on Mondays he would get pricing and learn what seafood was available for the week, and then go out to meet potential customers.[5]  He would also send weekly "itineraries" to Tevrow identifying which restaurants he planned on targeting that week.[6] His job performance was judged based upon his volume of sales.[7]  And, from July 25, 2014 – February 6, 2015,

---

[3] *See* Tortorici Dep., pp. 133-134. (emphasis added).
[4] *See* SMF ¶¶ 21; *See* Tortorici Dep., p. 138. (**Q:** Did you do that daily? (selling fish and faxing orders to the office) **A:** Yeah. Every day.  Six days a week.).
[5] *See* Tortorici Dep., pp. 140, 150.
[6] *See* Tortorici Dep., pp. 141-148.
[7] *See* Tortorici Dep., p. 157 ("**Q:** Did [Tevrow] ever say to you that he wanted to make sure that you were keeping up your sales or that he was not happy with your sales? **A**: Oh, yeah.  Absolutely. Absolutely.").

3

February 22, 2016 – September 22, 2017, his compensation was commission based.[8] In addition, Plaintiff complained repeatedly at his deposition that EMS' poor quality fish, and credit terms, negatively impacted his sales,[9] and that another EMS salesperson named Mark tried to steal his accounts, complaining that "salespeople don't do that to other salespeople."[10] In fact, Plaintiff testified that one of his sales mantras was "if you're not buying, I'm crying."[11]

On top of all this, Plaintiff identified his profession as "Seafood Sales" on his 2014 Form 1040 (Profit or Loss From Business), and "Sales" on his 2014 Form 2106 (Employee Business Expenses) Tax Returns.[12] And he testified that he was specifically hired by Defendants to sell fish and seafood, (halibut in particular).[13] Moreover, when Plaintiff left EMS, he did not go into the delivery business, or become a full-time labor relations specialist, rather, he took a job as a seafood salesman,[14] the career he had chosen for the last 30 years.[15]

In challenging this obvious fact, Plaintiff ignores much. Plaintiff ignores **all** the above undisputed facts and admissions. Further, Plaintiff ignores his own admissions that his "non-sales work" were simply times when he "filled-in" for other co-workers.[16] And Plaintiff ignores

---

[8] *See* SMF ¶¶ 26-32.
[9] *See* Tortorici Dep., p. 66 ("one of the biggest problems I had was a lot of my customers were alienated. A lot of my customers were alienated because of the quality of the halibut that was given to my customers. And let me just say this while I'm on the subject: Being a salesperson in this business is extremely difficult. Because nobody cares about your customers. They care about their customers. The only one that cares about your customers are you. And I've seen that. And I've had a lot of problems. And [Tevrow] had a lot of problems with some of his fish"); p. 83 ("Listen, I had a customer, Sea Fire Grill. The guy used to take a hundred, 200 pounds a day, a huge customer that I lost – that I lost a great customer because of their stupidity, Early Morning's stupidity.") p. 100 (describing how EMS' new credit terms made it harder for Plaintiff to get new customers).
[10] *See* Tortorici Dep., p. 155.
[11] *See* Tortorici Dep., p. 99.
[12] *See* SMF ¶ 23; *see* Wolman Decl., Exhibits D and E.
[13] *See* SMF ¶ 12; *see* Tortorici Dep., pp. 63-65 ("He wanted me to come and work with Early Morning to sell seafood. That's what he wanted, wanted me to come and sell fish, especially halibut."); p. 76 ("**Q**: Am I correct – I think we covered this before, but just to wrap up, was it your understanding at the time you were hired that your primary duties would be selling fish and seafood? **A**: Sales. **Q**: So is that a yes? **A**: Yes").
[14] *See* Tortorici Dep., p. 16 (discussing his current job for Bronx Freight & Fish as a "salesperson").
[15] *See* SMF ¶¶ 5-9.
[16] *See* Amended Complaint ("Complaint"), ¶ 47 ("Tevrow would require Tortorici to fill in for employees who were out of work at the EMS office/warehouse, such as Angelo Ruvio (EMS office employee), Juan and JoJo (EMS drivers, last names currently unknown).").

4

Defendants' argument that his deliveries to his own clients (especially those outside EMS' delivery range) were incidental to his sales efforts.

Instead Plaintiff simply argues that his "non-sales work" took up a substantial amount of his time. "Time alone, however, is not the sole test." 29 C.F.R. § 541.700(b); *Sydney v. Time Warner Entertainment-Advance/Newhouse Partnership*, 751 Fed.Appx. 90, 93 (2d Cir. 2018) (citing 29 C.F.R. § 541.700(b)). And the mere fact that Plaintiff spent time filling-in as a delivery driver,[17] even for four months a year, does not alter Plaintiff's primary duty to sell seafood.[18] First, even if time alone was dispositive, Plaintiff still spent more than 50% of his time, or the remaining 8 months out of the year, selling seafood. *Id*. ("employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."). Second, even if his "non-sales work" accounted for more than 50% of his time (which it did not), that would still not be dispositive. In fact, 29 C.F.R. § 541.700(c), describes a situation which completely rebuts Plaintiff's position:

> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register.

Like the assistant manager, Plaintiff's primary duty was exempt work, so even adopting Plaintiff's preposterous position that he filled-in as a delivery truck driver for four months every year, Plaintiff would still be exempt from the federal and New York state overtime requirements

---

[17] *See* Tortorici Dep., p. 164.
[18] In fact, Plaintiff testified that most of his sales calls occurred while he was driving around during the day. See Tortorici Dep., p. 135 ("**Q:** Right. So is it accurate to say that you would do most of your calls on your cell phone out of the ---in your car, or – **A:** Yes. **Q:--**as you were traveling around during the day? **A**: Yes. Yes, absolutely. **Q:** Is it also accurate to say that most of your calls were really out of the office? **A:** Out of the Office? **Q:** Yes. You didn't go to the office to make your sales calls, did you? **A:** No. No."). So even assuming he was driving around for a significant time, his sales efforts overlapped with his driving activities.

(and New York's spread of hours requirements) under the long-standing judicial and common-sense understandings of the "outside sales" exemption.

## POINT II

### DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF

Plaintiff got into a "shouting match" with Tevrow, kicked him out of his car, and left him on the side of the West Side Highway.[19] Two days later Plaintiff was terminated for insubordination and poor performance.[20] Yet, Plaintiff asks this Court to disregard these undisputed facts and believe that the real reason for his termination was Plaintiff's alleged 5-year old complaints about unpaid wages and misclassification. Such a position cannot be credited.

In opposition, Plaintiff has failed to meet his burden and produce "sufficient evidence to support a rational finding" that Defendants' proffered rationales (poor performance and insubordination) "were false, and that more likely than not [retaliation] was the real reason for the employment action." *Mullins v. City of New York*, 626 F.3d 47, 53-54 (2d Cir. 2010) (internal quotation marks omitted).

Instead of providing any evidence, Plaintiff simply asserts that the temporal proximity of his complaints and termination establish pretext. However, temporal proximity is insufficient to show pretext. *Philpott v. SUNY*, 805 Fed.Appx. 32, 34 (2d Cir. 2020) ("Temporal proximity between Philpott's complaints of discrimination and his termination is insufficient, standing alone, to carry his burden to show pretext"); *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more,

---

[19] *See* SMF ¶ 40.
[20] *See* SMF ¶ 42.

6

such temporal proximity is insufficient to satisfy [plaintiff]'s burden to bring forward some evidence of pretext").

Moreover, the temporal element actually lends support to Defendants' position, as two days prior to termination, Plaintiff left his boss on the side of the West Side Highway.[21] While conceding this event, Plaintiff argues that he could not have been terminated for insubordination because the September 22, 2017 termination email did not mention insubordination as a reason for termination, only poor sales performance. Yet, the September 22, 2017 email does mention insubordination, recognizing "the continuous static between" Plaintiff and Tevrow.[22] Further, this argument ignores that one-day before the termination, Tevrow wrote Plaintiff a text message stating:

> At this point I am not going to send any samples to fig and olive yesterday was probably the most mind-blowing day I can remember ***I don't know I can work for you anymore I say me work for you because you have no ability to listen*** I'm not getting into any more shooting matches with you you want to do things your own way then you have to find the situation where you can do it your own way but this is not the way I'm going to work until we sit down and talk and finally change things if then we're going to shake hands and walk away.[23]

Even assuming, *arguendo,* that Plaintiff has shown that insubordination was pretextual, he has failed to adequately challenge the other legitimate, non-retaliatory reason for Plaintiff's termination, *i.e.*, his poor performance. To rebut this position, Plaintiff concedes that his sales were low, but argues that he could not have been terminated for poor performance because the reason for his poor performance was EMS' allegedly low-quality seafood and burdensome credit terms. This argument is a distraction that is not due any weight. Even assuming all fault laid with EMS for Plaintiff's low sales, the record clearly establishes that EMS placed the blame on

---

[21] *See* SMF ¶ 40.
[22] *See* Tevrow Aff., Exh. 8.
[23] *See* Tevrow Aff., Exh. 7 (emphasis added).

Plaintiff and made its decision to terminate him based upon its dissatisfaction with Plaintiff's performance. *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir.2001) ("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action."); *see also Ehrbar v. Forest Hills Hosp.*, 131 F.Supp.3d 5, 28 (E.D.N.Y. 2015) (defendants proffered "numerous non-discriminatory reasons for firing Plaintiff, all relating to Plaintiff's poor job performance," including poor performance during a period in which plaintiff received "generally positive annual performance evaluations").

In sum, Plaintiff has not met his burden, and has not produced any evidence from which a juror or this Court could infer that Defendants' proffered and well-documented reasons for Plaintiff's termination (including (1) a January 13, 2017 email complaining about Plaintiff's job performance; (2) a February 15, 2017 email complaining about Plaintiff's job performance; (3) an August 25, 2017 text message complaining about Plaintiff's job performance; and (4) a September 22, 2017 email terminating Plaintiff for poor performance)[24] were pretextual. Plaintiff's conclusory statements will not suffice. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). ("mere conclusory allegations" cannot establish a pretext to defeat a summary judgment motion).

## POINT III

## **PLAINTIFF WAS NOT SUBJECTED TO A HOSTILE WORK ENVIRONMENT**

In opposition, Plaintiff simply recites the legal standard for a hostile work environment under the NYCHRL and conclusively claims that it has been met, because the comments "prompted Plaintiff to seek therapy and ultimately seek legal counsel,"[25] and that "[u]nder the

---

[24] *See* Tevrow Aff., Exhs. 2, 3, 4, 5, 6, and 8.
[25] Br. at p. 12.

8

899858v.2

NYCHRL, questions of severity and frequency are reserved for consideration of damages. *Farrugia, supra.*"[26] However, as an initial matter, "summary judgment [is] still ... available [under the NYCHRL] where [the defendants] can prove that the alleged discriminatory conduct in question ... could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences." *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 340 (S.D.N.Y. 2010) (internal quotations omitted). Here, the allegations, even if true, do not meet the threshold showing; as the "isolated comments and incidents, [all] of which are not apparently gender-related, are not sufficiently severe or pervasive to constitute a hostile work environment" *Golston-Green v. City of New York*, 184 A.D.3d 24, 42 (2d Dep't 2020). As discussed in Defendants' moving papers, the episodic, one-off comments all fall short as a matter of law.

More importantly, Plaintiff's claim for hostile work environment must be dismissed for the separate reason that he does not allege, nor demonstrate through evidence, that Plaintiff was singled out for mistreatment because of his gender. As discussed in Defendants' moving papers, and unrebutted in Plaintiff's opposition, "plaintiff must demonstrate that the abusive conduct was motivated by animus toward a protected class." *Cortes v. City of New York*, 700 F Supp 2d 474, 485 (S.D.N.Y.2010); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) ("It is not enough that a plaintiff has an overbearing or obnoxious boss. He must show that he has been treated less well at least in part because of his gender."); *Fattoruso v. Hilton Grand Vacations Co.*, 873 F.Supp.2d 569, 578 (S.D.N.Y.2012) (finding that plaintiff failed to state a NYCHRL hostile work environment claim where plaintiff failed to establish that he was treated differently because of his gender and both men and women found the team leader's behavior unfair and disgusting), *aff'd*, 525 Fed.Appx. 26 (2d Cir.2013). The "critical

---

[26] *Id.*

9

issue" for same-sex harassment claims is "whether members of one sex are exposed to disadvantageous terms or conditions of employment [e.g., a hostile work environment] to which members of the other sex are not." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). The Supreme Court outlined three examples of evidence that could satisfy this test: (1) the harasser is homosexual (and, therefore, presumably motivated by sexual desire); (2) a victim is "harassed in such sex-specific and derogatory terms by [someone of the same gender] as to make it clear that the harasser is motivated by general hostility to the presence of [someone of the same gender] in the workplace"; or (3) there is "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80–81.

Here, an examination of Plaintiff's proof reveals that he does not contend that he was disparaged or badly treated or subjected to an unpleasant work atmosphere in any way because he is a man. Plaintiff has offered no evidence that Tevrow is a homosexual or was hostile towards other men. In fact, many of the alleged utterances, in Plaintiff's own view, were not made to disparage or offend, but instead were instances in which Tevrow was looking to commiserate or was seeking advice from a friend.[27] In opposition, Plaintiff completely ignores this argument, and confuses comments mentioning sexual acts with mistreatment based upon a person's sex. *De Cintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306 (2d Cir. 1986) (it is clear that the statutory term "sex" is to be taken as synonymous with "gender" and does not include such concepts as "sexual activity", "sexual liaisons" or "sexual attractions"); *Lennert–Gonzalez v. Delta Airlines, Inc.*, 2013 WL 754710, at *8 (S.D.N.Y. 2013) (dismissing on summary judgment the plaintiff's NYCHRL hostile work environment claim because the

---

[27] *See* Tortorici Dep., p. 309. ("Tevrow was telling him these personal things because he was seeking to "commiserate with him, advice, and sympathy.")

plaintiff had failed to show that any incidents were based on animus directed towards plaintiff's protected class rather than "[p]ersonal animus").

Accordingly, Plaintiff's hostile work environment claims must be dismissed as a matter of law.

## POINT IV

## DEFENDANTS DID NOT VIOLATE NYLL § 195

In opposing, summary judgment on Defendants' alleged violation of NYLL § 195, Plaintiff does not contest Defendants' underlying position that Plaintiff was always paid on time.[28] Instead, Plaintiff argues that NYLL 198(1-b)'s affirmative defense (the "complete and timely payment of all wages due") was not available prior to February 27, 2015 because of a scrivener's error by the legislature.

Even assuming, *arguendo,* that Plaintiff's position is correct, and that Plaintiff could prove that Defendants failed to provide the requisite wage notices, Plaintiff would only be entitled to relief under the earlier statutory limit for violations under NYLL § 195, which was $50 per work week "not to exceed a total of two thousand five hundred dollars." 2010 N.Y. Sess. Laws ch. 564 § 7 (McKinney), amending NYLL § 198(1-b). *Dudley v. Hanzon Homecare Services, Inc.*, 2018 WL 481884, at *4 (S.D.N.Y. 2018) (acknowledging the scrivener's error, and holding that Plaintiff's damages are capped at $2,500 for the pre-amendment period, and that defendants may use the affirmative defense to avoid the 2015 amendments increase of statutory maximum damages to $5000.). Accordingly, it is respectfully requested that this Court place a cap of $2,500 for potential damages under this cause of action.

---

[28] *See* Tortorici Dep. p. 230 ("**Q:** Were there any weeks when you were not paid as agreed your flat weekly amount? **A:** No. No."); *See also* Tevrow Dep., p. 105 ("There was never a week when he didn't get paid."); *See* also, SMF ¶ 33.

## **CONCLUSION**

For all the reasons set forth above, the Court should grant summary judgment in Defendants' favor on each of Plaintiff s claims in the Complaint

Dated:   New York, New York
         April 15, 2021

                                      **DAVIDOFF HUTCHER & CITRON LLP**

                                      By:   */s/ Derek Wolman*
                                                Derek Wolman, Esq.
                                                Benjamin Noren, Esq.
                                                605 Third Avenue, 34th Floor
                                                New York, New York 10158
                                                (212) 557-7200 (Main Office)
                                                (212) 286-1884 (Facsimile)
                                                daw@dhclegal.com
                                                bn@dhclegal.com
                                                *Attorneys for Defendants*

899858v.2