UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CARMELO TORTORICI,                              :
                                                :
                              *Plaintiff*,       :        17-cv-7507 (PAC) (KHP)
                                                :
        -*against*-                             :
                                                :        **MEMORANDUM ORDER**
BUS-TEV, LLC d/b/a EARLY MORNING                :        **ADOPTING REPORT AND**
SEAFOOD   and   ERIC   TEVROW,   *in   his*     :        **RECOMMENDATION**
*individual capacity*,                          :
                                                :
                              *Defendants*.      :
------------------------------------------------------------X

        On October 2, 2017, Plaintiff Carmelo Tortorici sued his former employer, Bus-Tev, LLC

d/b/a Early Morning Seafood ("EMS") and his former boss, Eric Tevrow ("Tevrow," and together

with EMS, the "Defendants"). Compl. 1, ECF No. 1. Plaintiff filed an Amended Complaint on

July 9, 2018, alleging that Defendants violated (1) the Fair Labor Standards Act (FLSA), 29 U.S.C.

§§ 201 *et seq.*, by failing to provide him with overtime compensation; (2) the New York Labor Law

("NYLL"), N.Y. Lab. Law §§ 195, 650 *et seq.*, by failing to provide Plaintiff with overtime and

spread-of-hours compensation and wage statements, and by retaliating against Plaintiff when he

complained to Tevrow about not being classified as a W-2 employee and not being paid for non-

sales work; and (3) the New York City Human Rights Law ("NYCHRL") and the New York State

Human Rights Law ("NYSHRL"), by subjecting Plaintiff to a hostile work environment. Am.

Compl. ¶¶ 95–122, ECF No. 21. On February 26, 2021, Defendants moved for summary judgment

on all claims. Mot. Summ. J. 1, ECF No. 78.

        On June 28, 2021, Magistrate Judge Katharine Parker issued a thoughtful and thorough 27-

page Report and Recommendation ("R. & R."). The R. & R. recommends that the Court grant

Defendants summary judgment on Plaintiff's FLSA and NYLL wage and hour claims and "decline

to exercise supplemental jurisdiction over Plaintiff's remaining claims . . . without prejudice to

1

Plaintiff's right to refile these claims in state court." R. & R. 14–15, ECF No. 84 (*post*). If the Court decides to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, Magistrate Judge Parker recommends that the Court grant Defendants summary judgment on each of those claims. *Id.* at 15, 20, 25, 26. The R. & R. describes the facts and the parties' arguments in detail. As neither side objects to the R. & R.'s recitation of the facts and the Court finds no error in it, the Court adopts the R. & R.'s statement of facts. The R. & R. is attached below, and familiarity with it is assumed.

Plaintiff timely filed written objections to each of Magistrate Judge Parker's recommendations on July 12, 2021. Pl.'s Objs. to R. & R. 1–2, ECF No. 85. Defendants responded to Plaintiff's objections on July 22, 2021 and did not raise any objections of their own. Defs.' Reply Mem. in Opp'n 1, ECF No. 86 ("Defs.' Opp'n"). Finding no error in the R. & R., the Court adopts Magistrate Judge Parker's recommendations to dismiss Plaintiff's FLSA and NYLL wage and hour claims and decline to exercise supplemental jurisdiction over Plaintiffs remaining state law claims for retaliation, hostile work environment, and wage statement violations.

## DISCUSSION

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court may accept the portions of the R. & R. "to which no objections have been made and which are not facially erroneous." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 170 (S.D.N.Y. 2003) (citation omitted). But the "court must review *de novo* the portions of a magistrate judge's report and recommendation to which a party properly objects." *Antolini v. McCloskey*, No. 19 Civ. 9038, 2021 WL 3076698, at *2 (S.D.N.Y. July 20, 2021) (citing § 636(b)(1)(C)).

To invoke *de novo* review, objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d

2

485, 487 (S.D.N.Y. 2009). Merely perfunctory objections will not invoke *de novo* review. *Id.* Where "a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Id.* Clear error exists where, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *Janes v. Berryhill*, 498 F. Supp. 3d 540, 541 (S.D.N.Y. 2020) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)) (alteration in original). "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Antolini*, 2021 WL 3076698, at *2 (cleaned up).

All of Plaintiff's objections are perfunctory and conclusory, and many are simply copied portions of Plaintiff's opposition brief to Defendants' motion for summary judgment. Therefore, the Court reviews the R. & R. for clear error.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief." *Bell v. Pham*, No. 09 Civ. 1699, 2011 WL 1142857, at *2 (S.D.N.Y. Mar. 24, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## I.    FLSA and NYLL Wage and Hour Claims

Magistrate Judge Parker did not err (let alone clearly err) in determining that Plaintiff's primary duty was making sales and that the outside salesman exemption found in 29 U.S.C. § 213(a)(1) applies here to bar Plaintiff's FLSA and NYLL wage and hour claims. Magistrate Judge Parker concluded that, assuming the truth of Plaintiff's testimony regarding the breakdown of his

3

job responsibilities, no reasonable juror could conclude that Plaintiff's non-sales duties[1] accounted for more than 50% of his job duties—particularly because Plaintiff admits that they took less than half of his work time. R. & R. 11–12. Magistrate Judge Parker went on to hold that even if the court assumed Plaintiff spent more than 50% of his time on non-sales duties, the sales exemption would still apply because an employee need not spend the majority of his time performing sales duties for sales to be considered his primary duty, if the other factors support a conclusion that the employee's primary duty was making sales. R. & R. 12–13 (citing 29 C.F.R. § 541.700(b)). Several of the regulatory factors[2] support a finding that Plaintiff's primary duty was making outside sales: (1) "Plaintiff concedes that his primary job responsibilities were to sell fish and seafood and to develop additional client accounts, and that he focused on that work six days a week over the course of a typical work week"; (2) Plaintiff was, for the most part, not supervised at EMS; and (3) "a significant portion of Plaintiff's compensation was commission based." R. & R. 12–13. These findings are well supported by the record and the law.

Plaintiff challenges Magistrate Judge Parker's conclusion that Plaintiff's primary duty was making sales, but Plaintiff simply repeats the same arguments raised and rejected before, and cites as support *Killion v. KeHe Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014), an out-of-circuit case that was not raised before Magistrate Judge Parker. Magistrate Judge Parker's R. & R. is not

---

[1] These duties were: (1) filling in at the warehouse when a worker named Angelo was out, including during one three-week period; (2) filling in "as a driver and/or train[ing] new EMS drivers throughout the year" for approximately four months of every year; (3) occasionally chauffeuring Tevrow to social and personal appointments throughout the workday; and (4) representing EMS at the state labor board on a few occasions. R. & R. 11–12.

[2] 29 C.F.R. § 541.700(a) provides that "[f]actors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."

4

contrary to law for failing to consider a non-binding case that was not raised to the court's attention. In any event, *Killion* is unpersuasive here.

In *Killion*, the Sixth Circuit held that the district court erred by concluding as a matter of law that the plaintiffs' primary duty was making sales, because (1) "the vast majority of the plaintiffs' time is spent stocking and cleaning shelves"; (2) "the plaintiffs' compensation is primarily based on stocking shelves"; and (3) the work plaintiffs performed "could be seen to be in furtherance of sales made by the account managers rather than in furtherance of plaintiffs' own sales." *Killion*, 761 F.3d at 585–86. Here, by contrast, (i) there is no documentation of Plaintiff's job responsibilities, and Plaintiff admits that nonexempt work took less than half his working time; (ii) a significant portion of Plaintiff's compensation was based on sales commissions; and (iii) any deliveries Plaintiff made to his own clients are considered incidental to his outside sales work, and count as exempt work. R. & R. 12 & n. 4, 13. Thus, *Killion* is distinguishable and unpersuasive.

Plaintiff's objection is overruled; finding no clear error, the Court adopts the R. & R.'s recommendation and dismisses Plaintiff's FLSA and NYLL wage and hour claims based on the application of the outside salesman exemption.

## II.   Supplemental Jurisdiction

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims; they are dismissed without prejudice. A court "may decline to exercise supplemental jurisdiction . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, the only claim over which the Court has original jurisdiction is Plaintiff's FLSA claim (under 28 U.S.C. § 1331), as the rest of Plaintiff's claims arise under state law and there is no diversity jurisdiction.[3] Plaintiff's argument in favor of exercising supplemental jurisdiction over his remaining state law claims, which is confined to a single footnote, does not persuade the Court that this is anything other than the "usual case."[4] Resolving Plaintiff's remaining claims would require the Court to conduct different legal analyses than the exemption analysis above, and thus expend more federal judicial resources on this case. The judicial resources spent supervising this matter so far need not go to waste, as "all of the discovery in this action can be used in state court." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 393 (S.D.N.Y. 2011). And although Plaintiff may find it more convenient to litigate all of his claims before this Court, dismissal will not result in unfairness to Plaintiff, because Plaintiff is free to file his state claims in state court. *Kolari*, 455 F.3d at 123–24; *Chenensky*, 942 F. Supp. 2d at 394 ("While some duplication of efforts is unavoidable if this action is dismissed and restarted, fairness does not counsel retaining jurisdiction. The parties will not be materially prejudiced by having to re-file in state court."). Finally, dismissing Plaintiff's remaining state law claims without prejudice respects the sovereignty of the New York State courts. *See Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147–48

---

[3] Plaintiff and Tevrow are both citizens of New Jersey. *See* Am. Compl. ¶¶ 10, 15.

[4] The Court has serious reservations regarding whether it even has supplemental jurisdiction over Plaintiff's hostile work environment claims, as the operative facts of those claims (involving alleged sexual harassment) seemingly have nothing to do with the operative facts underlying Plaintiff's FLSA wage and hour claims. *See Shibetti v. Z Rest., Diner & Lounge, Inc.*, 478 F. Supp. 3d 403, 408 (E.D.N.Y. 2020) (concluding that plaintiffs' discrimination claims "simply have nothing to do with whether plaintiffs were paid the minimum wage and overtime as required under the FLSA" and therefore do not arise from the same case or controversy as the FLSA claim); *see also id.* at 411 ("[A] case could arise, albeit unlikely, that a manager could tell an employee that he will not pay her an overtime rate except in exchange for a sexual *quid pro quo*. There, the FLSA and sexual harassment claims would arise out of a common nucleus of operative fact. But that is not this case."). The Court need not resolve that issue, however, because even assuming the Court has supplemental jurisdiction over Plaintiff's hostile work environment claims, the Court declines to exercise that jurisdiction.

6

(E.D.N.Y. 2015); *Chenensky*, 942 F. Supp. 3d at 395 ("Comity 'reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.'" (citation omitted)). Balancing these factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## CONCLUSION

The Court adopts Magistrate Judge Parker's R. & R. in full. The Court grants Defendants summary judgment on Plaintiff's FLSA and NYLL wage and hour claims; they are dismissed with prejudice. The Court declines to exercise jurisdiction over Plaintiff's remaining state law claims; they are dismissed without prejudice.

The Clerk of Court is directed to close the motion at ECF number 78 and close this case.

Dated: New York, New York
September _14_, 2021

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

CARMELO TORTORICI,

                              Plaintiff,

                    -against-

BUS-TEV, LLC d/b/a EARLY MORNING SEAFOOD
and ERIC TEVROW, *in his individual capacity*,

                              Defendants.

--------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/28/2021

**REPORT AND
RECOMMENDATION  ON
MOTION FOR SUMMARY
JUDGMENT**

17-cv-7507 (PAC) (KHP)

**TO:      THE HONORABLE PAUL A. CROTTY, United States District Judge**
**FROM:   KATHARINE H. PARKER, United States Magistrate Judge**

On October 2, 2017, Plaintiff Carmelo Tortorici brought this action against Defendants

Bus-Tev, LLC d/b/a Early Morning Seafood ("EMS") and Eric Tevrow (collectively, "Defendants").

On July 9, 2018, Plaintiff filed an Amended Complaint, which alleges that Defendants violated

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, for unpaid overtime and the

New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*, for unpaid overtime compensation,

unpaid spread-of-hours compensation, failure to provide wage statements, and retaliation.

(ECF No. 21.) Plaintiff also alleges a claim for hostile work environment under both the New

York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Before this Court is Defendants' motion for summary judgment, which seeks dismissal of

the operative Complaint. (ECF No. 78.) For the reasons set forth below, I respectfully

recommend that Defendants' motion be GRANTED.

## Background

### I.     *The Parties*

EMS is a New York limited liability company that sells and delivers seafood, primarily to restaurants throughout the New York tristate area. (ECF No. 81-3 ("Counter 56.1") ¶ 1.) Defendant Tevrow is the managing member and President of EMS. (*Id.* ¶ 2.) Tevrow and Plaintiff have known each other since 2010. (*Id.* ¶ 10.) In April 2013, Plaintiff left his job selling seafood for a company called Blue Ribbon. (*Id.* ¶ 12.) Tevrow wanted Plaintiff to take a job selling seafood for EMS at that time. (*Id.*) Plaintiff agreed and commenced his employment with Defendants on or about April 26, 2013. (*Id.* ¶ 3.) Plaintiff worked for EMS as Vice-President of Sales for approximately four and a half years, although the parties dispute the breakdown of his responsibilities in that role. (*See id.* ¶¶ 18-19.) EMS terminated Plaintiff on September 22, 2017. (*Id.* ¶ 4.)

### II.    *Plaintiff's Job at EMS*

Defendants contend that Plaintiff's primary responsibility at EMS was to sell fish and seafood and that Plaintiff's sales were predominantly made outside of the EMS offices. (*E.g. id.* ¶¶ 18, 20.) While Plaintiff concedes that one of his duties was to sell fish, he asserts that he also performed warehouse work, worked as a driver on occasion for a total of approximately four months out of the year, acted as a chauffeur for the company, and represented EMS before the New York State Labor Board. (*Id.* ¶ 18.)

Plaintiff's compensation structure shifted throughout his employment at EMS. (Counter 56.1 ¶ 27.) Initially, Plaintiff's starting salary in April 2013 was $1,500 per week. (*Id.* ¶¶ 13-14.)

2

From April 26, 2014 through July 18, 2014,[1] Plaintiff received $1,500 per week. (*Id.* ¶ 28.) From July 25, 2014 through February 6, 2015, Plaintiff was paid on commission—5% of his total sales—on a weekly basis. (*Id.* ¶ 29.) From February 22, 2016 through February 17, 2017, Plaintiff earned $1,500 per week plus a 3% commission on his sales. (*Id.* ¶ 31.) And for the remainder of his employment at EMS, Plaintiff received $400 per week plus a 5% commission on weekly sales. (*Id.* ¶ 32.) Plaintiff admits that he was always paid on time. (*Id.* ¶ 33.)

In 2014, while working at EMS, Plaintiff indicated that he was a salesman on both his Form 1040 (Profit or Loss from Business) and his Form 2106 (Employee Business Expenses) tax documents. (*Id.* ¶ 23.) Plaintiff also represented that, in 2014, he drove 25,000 miles in the course of his employment on those same forms. (*Id.* ¶ 24.) Furthermore, Plaintiff certifies that he made the same representations on his tax returns in all subsequent years that he worked for EMS. (*Id.* ¶ 25.)

### III.    *Plaintiff's Performance*

The evidence suggests that Defendants first took issue with Plaintiff's performance on July 31, 2014. Tevrow sent Plaintiff an email noting that Plaintiff had not met his sales goals. Specifically, the email stated that Plaintiff's "projections from day one of what you would accomplish doesn't even come close on any level . . . you implied you would be able to self [sic.] easily 1200 – 1500 pounds of halibut a week. On any given week, you have never sold over 400 pounds." (Counter 56.1 ¶ 35.)

---

[1] Paragraph 28 of the parties' 56.1 statements reads: "From April 26, 2014, through July 18, 2017, Plaintiff received $1,500 per week. (*See* Tevrow Aff., ¶ 10)." The Court assumes that this is a typo and that the intended time frame was from April 26, 2014 through July 18, 201<u>4</u>, given that the parties agree Plaintiff was paid differently after July 18, 2014.

Years later, on January 13, 2017, Tevrow sent Plaintiff an email detailing certain concerns related to Plaintiff's job performance. The email criticizes Plaintiff for, among other things, (1) failing to obtain menus from Plaintiff's clientele; (2) ordering fish not included in EMS's inventory; and (3) failing to provide Tevrow with a weekly itinerary, as was required for EMS salespersons. (ECF No. 80 ("Tevrow Aff."), Ex. 3.)

On February 15, 2017 Tevrow sent Plaintiff an email highlighting issues with Plaintiff's sales numbers. The email stated as follows:

> After four years working together, I am unfortunately coming to the conclusion that you and EMS are not a good fit. I have been extremely patient. Four years is a long time. From the first year, your sales never came close to what you represented they would be, $30-40k a week. Your actual sales were more around 17k....Now, its year four going on five, and your average is 20k and your sales even lower...Being a full time salesperson, and after 48 months, I would think you should have 48 accounts at $1,000 average would be $48k a year.

(Counter 56.1 ¶ 37.) Twice thereafter, Tevrow sent Plaintiff additional communications criticizing Plaintiff's sales numbers. On August 25, 2017, Tevrow sent Plaintiff a text message referring to Plaintiff's sales numbers as "embarrassing." (Tevrow Aff., Ex. 5.) Then, on September 8, 2017, Tevrow sent Plaintiff an email that, in pertinent part, characterized Plaintiff's sales numbers as "disappointing to say the least" and expressed Tevrow's frustration at Plaintiff's apparent lack of effort as a salesperson. (Id., Ex. 6.)

Tensions between Plaintiff and Tevrow escalated in the following weeks. On September 20, 2017, Plaintiff kicked Tevrow out of Plaintiff's car while traveling on the West Side Highway in New York City. (Counter 56.1 ¶ 40.) Shortly thereafter, and after a few other communications between them, Tevrow terminated Plaintiff's employment with EMS.  Tevrow

4

cited "[t]he results over the past five years, along with the continuous static between the two of us" as the basis for the termination. (*Id.* ¶ 42.) The email also noted that Tevrow had "communicated numerous times [his] concerns and dissatisfaction regarding [Plaintiff's] performance." (*Id.*)

Notwithstanding these communications, Plaintiff maintains that his sales earnings improved over the course of his employment and that any dip in sales was attributable to the quality of EMS's fish, not the quality of Plaintiff's work. (*See* ECF No. 83 ("Reply 56.1") ¶¶ 46-47.) Plaintiff asserts that the real reason he was terminated was because he complained to Tevrow about not being classified as a traditional W-2 employee. (*Id.* ¶ 54.)

### IV.     *Inappropriate Comments*

In addition to his complaints about how he was paid, Plaintiff claims that he was forced to endure a hostile work environment because of his gender while working at EMS. (Reply 56.1 ¶ 55.) According to Plaintiff, Tevrow made sexually inappropriate comments to Plaintiff on a regular basis. (*Id.*) In particular, Plaintiff asserts that Tevrow confided in Plaintiff on at least three separate occasions about Tevrow's frustrations and difficulties with his marital sex life. (*Id.* ¶¶ 56-58.) Plaintiff asserts that Tevrow once commented on a restaurant hostess's breasts while visiting the establishment on business. (*Id.* ¶ 59.) On another occasion, Tevrow allegedly told Plaintiff that he once "fucked the shit out of" a girl in the bathroom at the restaurant where Tevrow worked. (*Id.* ¶ 60.) Lastly, Plaintiff alleges that Tevrow once told Plaintiff to suck his dick. (*Id.* ¶ 61.)

### V.     *The Instant Motion for Summary Judgment*

Discovery having now been completed, Defendants filed the instant motion for

summary judgment. Defendants seek dismissal of Plaintiff's wage claims on the ground that he was employed as an outside salesperson and, thus, is exempt from the minimum wage and overtime provisions of the FLSA and NYLL. Defendants seek dismissal of Plaintiff's retaliation claim on the ground that there is no evidence of retaliatory motive and that the only reasonable conclusion a jury could reach is that Plaintiff's employment was terminated because of his poor performance and insubordination. Finally, Defendants argue that Tevrow's alleged remarks do not give rise to a hostile work environment claim under either the NYSHRL or the NYCHRL because they amount to trivial or petty slights.

For the reasons set forth below, I respectfully recommend that Defendants' motion for summary judgment (ECF No. 78) be GRANTED.

**Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. (*Id.* at 255.) However, the opposing party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations

and citations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). If the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and summary judgment is warranted. *Matsushita*, 475 U.S. at 587 (citation omitted).

Evidence submitted in support of or in opposition to a motion for summary judgment can only be considered by the Court if that evidence could be properly authenticated and admitted at trial. *See Archie MD, Inc. v. Elsevier, Inc.*, No. 16-cv-6614 (JSR), 2017 U.S. Dist. LEXIS 37141, at *3 n.2 (S.D.N.Y. Mar. 13, 2017); *see also Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (plaintiff could not rely on inadmissible hearsay to oppose motion for summary judgment); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675 (S.D.N.Y. 2012) (comment made to plaintiff by non-party that the non-party and plaintiff's employer "did not like blacks" was inadmissible hearsay). A non-moving party cannot create a material issue of fact to defeat summary judgment by making conclusory statements that are unsupported by admissible evidence. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).

When determining whether a grant of summary judgment is appropriate, the Court's decision should not hinge on whether it "'believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.'" *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998)). Instead, the court must determine whether there is such a "'lack of evidence in support of the plaintiff's position" or evidence that is "'so overwhelmingly tilted in one direction that any

contrary finding would constitute clear error.'" *Id.* It is well-settled that "credibility

assessments, choices between conflicting versions of the events, and the weighing of evidence

are matters for the jury, not for the court on a motion for summary judgment." *Curry v. City of

Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55–56 (2d

Cir. 1997)).

**Analysis**

I.   ***Plaintiff's Classification – the Outside Sales Exemption***

  The minimum wage and overtime provisions set forth in the FLSA and cited by Plaintiff

do *not* apply to "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. §

213(a)(1). Under the applicable regulations, an "outside salesman" is defined as any employee

"whose primary duty is making sales within the meaning of section 3(k) of the Act, or obtaining

orders or contracts for services or for the use of facilities for which a consideration will be paid

by the client or customer; and who is customarily and regularly engaged away from the

employer's place or places of business in performing such primary duty."[2] 29 C.F.R. 541.500(a).

The regulations also provide that the term "primary duty" means "the principal, main, major or

most important duty that the employee performs," based on the totality of the relevant

circumstances. 29 C.F.R. 541.700(a).

  To determine an employee's primary duty, courts consider the following non-exhaustive

list of factors:

> [1] the relative importance of the exempt duties as compared
> with other types of duties; [2] the amount of time spent
> performing exempt work; [3] the employee's relative freedom

---

[2] Under Section 3(k) of the FLSA, sales include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k).

from direct supervision; and [4] the relationship between the
employee's salary and the wages paid to other employees for the
kind of nonexempt work performed by the employee.

*Id.* Indeed, the second factor – the amount of time spent performing exempt work – "can be a

useful guide in determining whether exempt work is the primary duty of an employee." 29

C.F.R. 541.700(b). Thus, if an employee spends the majority of his or her time at work

performing exempt work, that employee is likely exempt from the FLSA overtime provision,

although "time alone . . . is not the sole test." *Id.* Moreover, when engaging in such a wage and

hour exemption inquiry, courts should evaluate "work performed incidental to and in

conjunction with the employee's own outside sales or solicitations, including incidental

deliveries and collections . . . as exempt outside sales work." 29 C.F.R. 541.500(b).

The question of whether an employee is exempt is a "mixed question of law and fact."

*Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010). The question of how an employee

spends his or her time is a question of fact, while the question of whether the employee's

actions render him or her exempt from the FLSA overtime provisions is a question of law. *Icicle*

*Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). "Accordingly, in deciding whether to

grant a defendant-employer's motion for summary judgment on the ground that the plaintiff-

employee is exempt from the FLSA's overtime provision, the court must first construe the

evidence regarding how the employee spent his or her time in the light most favorable to the

employee (the non-moving party). The court must then determine, as a matter of law,

whether—for purposes of deciding the motion for summary judgment—the exemption applies

on those facts." *Sydney v. Time Warner Entm't-Advance/Newhouse P'ship*, 751 Fed. App. 90,93

(2d Cir. 2018) (summary order).

New York law provides a substantially similar outside salesperson exemption. Thus, the analysis is the same under federal and state law. *See* 12 N.Y.C.R.R. § 142-2.2 (stating that the NYLL's overtime provision is subject to the exemptions set forth in the FLSA, 29 U.S.C. § 213(a)(1)).

A. *Primary Duty*

Plaintiff concedes that he was hired by Tevrow primarily to sell seafood. (Counter 56.1 ¶ 12; ECF No. 79, Ex. B ("Tortorici Dep.") 76:7-14.) Plaintiff testified that his primary duty as Vice President of Sales was to sell fish and seafood to his clients. (Tortorici Dep. 133:21-134:5.) Plaintiff further testified that he executed sales, and filled orders in connection with those sales, six days a week. (*Id.* at 138:2-14.) Thus, Plaintiff's own testimony confirming the central importance of Plaintiff's sales work to his job strongly suggests that making sales was Plaintiff's primary duty.

Plaintiff also testified that he was rarely supervised during the course of his employment. Specifically, Plaintiff stated that he almost always worked alone, with very few exceptions. (*See* Tortorici Dep. 135:22-136:4.) Occasionally – *i.e.*, less than once a month – Tevrow would accompany Plaintiff on business meetings. (Tortorici Dep. 136:5-24.) Plaintiff affirmed that he was not otherwise supervised by anyone while working at EMS. (Tortorici Dep. 136:25-137:3.) While Plaintiff testified that Tevrow occasionally requested that Plaintiff provide an itinerary of his weekly meetings, Plaintiff clarified that he did not view this as an effort to supervise him. (Tortorici Dep. 157:6-16.) According to Plaintiff, Tevrow requested these itineraries to understand Plaintiff's plan for obtaining new clients. (Tortorici Dep. 158: 14-21.) Plaintiff's concessions confirming the consistent lack of supervision at EMS support

application of the outside sales exemption. *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 442 (S.D.N.Y. 2017).

In addition, for the majority of Plaintiff's time at EMS Plaintiff was paid, at least in part, with sales commissions. From in or about late July 2014 through the end of Plaintiff's employment in 2017, Plaintiff typically earned commissions ranging from 3% to 5% of Plaintiff's sales. (Counter 56.1 ¶¶ 29-32.) This relatively consistent commission-oriented compensation structure suggests that Plaintiff was indeed "making sales" for purposes of the outside sales exemption analysis and was compensated as a salesperson. *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 234 (2d Cir. 2018); *Martin*, 273 F. Supp. 3d at 442.

With respect to the amount of time Plaintiff spent working as a salesperson compared to his other duties, the record is a bit murkier. Although Defendants generally assert that Plaintiff spent less than 50% of his time performing non-exempt work, Defendants do not offer any evidence, documentary or otherwise, regarding Plaintiff's actual time working at particular tasks. (ECF No. 78-1 at 6.) Similarly, while Plaintiff repeatedly lists numerous job responsibilities he undertook outside of his role as a salesperson, (*see* Counter 56.1 ¶¶ 18-22,) he offers limited evidence to clarify the precise amount of time he actually spent performing those job duties.

To be sure, Plaintiff's deposition testimony provides some insight into the breakdown of his job duties. Plaintiff testified that he sometimes filled-in for his coworker Angelo at the EMS warehouse. (Tortorici Dep. 158:25-160:6.) During his deposition, Plaintiff explained that he filled in on certain occasions when Angelo was away from work, including a particular three-

week period where Angelo was home with his ailing wife. (Tortorici Dep. 160:10-164:4.)[3]

Plaintiff also testified that he filled in as a driver and/or trained new EMS drivers throughout

the year. Plaintiff estimates that he spent a total of approximately four months out of every

year he was employed by EMS working in that capacity.  (Tortorici Dep. 170:4-10.)[4] Plaintiff

also testified that he occasionally chauffeured for Tevrow, driving him to social engagements

and personal appointments throughout the workday. (Tortorici Dep. 195:21-200:1.) And lastly,

Plaintiff testified about a few additional instances where he resolved labor disputes for EMS by

appearing before the state labor board and at a few all-day unemployment hearings on behalf

of the company. (Tortorici Dep. 206:11-210:7.)

Assuming all of this testimony to be true and drawing all reasonable inferences in

Plaintiff's favor, no reasonable juror could conclude that these non-sales duties constituted

more than 50% of Plaintiff's job duties. In particular, all of these duties combined took less

than half of Plaintiff's work time by his own admission. Further, Plaintiff concedes that his

primary job responsibilities were to sell fish and seafood and to develop additional client

accounts, and that he focused on that work six days a week over the course of a typical work

week. The parties also agree that Plaintiff was not supervised while working at EMS, barring

certain limited exceptions outlined above. And a significant portion of Plaintiff's compensation

was commission based. Accordingly, even if the Court were to assume that Plaintiff spent 50%

of his work time on the non-exempt responsibilities enumerated above, the outside sales

---

[3] Occasionally, while filling in at the warehouse, Tevrow asked Plaintiff to drive other EMS workers home on his way home from work. (Tortorici Dep. 201:24-203:14.)

[4] To the extent Plaintiff made deliveries to his own clients, the Court must construe those deliveries as incidental to Plaintiff's exempt outside sales work. 29 C.F.R. 541.500(b). Thus, those deliveries do not contribute to Plaintiff's non-exempt workload.

exemption would still apply. *See* C.F.R. 541.700(b) (confirming that employees need not spend more than 50% of their time performing exempt duties in order for the exemption to apply and stating that "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion"); *Martin*, 273 F. Supp. 3d at 442-43 (applying outside salesperson exemption, in part, because plaintiffs bore many indicia of outside salespeople: they solicited new business, were paid commission, were minimally supervised, and worked away from the office); *Chenensky v. New York Life Ins. Co.*, No. 07-cv-11504 (WHP), 2009 U.S. Dist. LEXIS 119549, at *10-17 (S.D.N.Y. Dec. 22, 2009) (same); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 165-66 (2012) (holding that the petitioner pharmaceutical detailers were outside salesmen because they were hired for their sales experience, worked away from the office with minimal supervision, and were rewarded for their sales with compensation incentives). Thus, the Court must next assess whether Plaintiff was "customarily and regularly engaged away from [EMS's] place . . . of business in performing such primary duty." 29 C.F.R. 541.500(a).

B. *Working Remotely*

Based on a careful review of the evidence, there is simply no dispute that Plaintiff performed a substantial proportion of his sales duties on the road, away from the EMS office. Plaintiff testified that his day-to-day responsibilities largely consisted of setting up client meetings, that he would make calls to set up those meetings while traveling away from EMS headquarters, and that the meetings themselves typically took place at the clients' restaurants/facilities. (Tortorici Dep. 134:6-135:21.) Consistent with that approach to sales, the record also indicates that, throughout his employment at EMS, Plaintiff drove 25,000 miles

a year in connection with his sales initiatives. (Counter 56.1 ¶¶ 24-25.) Thus, the Court finds

that Plaintiff regularly performed his duties as an EMS salesperson away from EMS's place of

business. *See Lint v. Northwestern Mut. Life Ins. Co.*, No. 09-cv-1373 (DMS) (RBB), 2010 U.S.

Dist. LEXIS 123117, at *10 (S.D. Cal. Nov. 19, 2010) (finding that plaintiff was an outside

salesman exempt from the FLSA, in part, because he "engaged in travel to generate business

and consummate sales . . . and would drive approximately 4,000 miles each month in doing

so").

Accordingly, based on his own testimony about his primary duties, his independence,

and his traveling to clients to make sales, the outside sales exemption applies to Plaintiff. Thus,

I respectfully recommend that Plaintiff's FLSA and NYLL wage and hour claims be dismissed.

## II.   *Supplemental Jurisdiction*

Given that I have recommended dismissing Plaintiff's only federal claim, the Court must

decide whether to exercise supplemental jurisdiction over Plaintiff's claims filed under the

NYLL, NYSHRL, and NYCHRL. A district court "may decline to exercise supplemental jurisdiction

over [a pendent state law claim] if . . . the district court has dismissed all claims over which it

has original jurisdiction." 28 U.S.C. § 1367(c)(3). There is no "mandatory rule to be applied

inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). That said,

"in the usual case in which all federal-law claims are eliminated before trial, the balance of

factors to be considered under the pendent jurisdiction doctrine — judicial economy,

convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Id.; see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.

1986) ("federal courts, absent exceptional circumstances, should abstain from exercising

14

pendent jurisdiction when federal claims in a case can be disposed of by summary judgment");

*Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("[i]n the interest of comity,

the Second Circuit instructs that absent exceptional circumstances, where federal claims can be

disposed of pursuant to . . . summary judgment grounds, courts should abstain from exercising

pendent jurisdiction." (cleaned up).

Based on a review of the applicable case law, it appears that Courts only diverge from

this general rule when the pendent claims at issue require the same legal analysis as the federal

claims previously addressed by the presiding court. *See, e.g.*, *Nunez v. New York State Dep't of*

*Corrs. & Cmty. Supervision*, No. 14-cv-6647 (JMF), 2017 U.S. Dist. LEXIS 128059, at *12-14

(S.D.N.Y. Aug. 11, 2017) (opting to exercise supplemental jurisdiction over a NYSHRL retaliation

claim because it required an identical analysis to the analysis already employed by the court but

declining to exercise supplemental jurisdiction over a NYCHRL claim, which would have required

an independent analysis). In this case, the analysis required to resolve Plaintiff's remaining

claims is different from the exemption analysis conducted above. Accordingly, I respectfully

recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's

remaining claims for retaliation, hostile work environment, and failure to provide wage

statements without prejudice to Plaintiff's right to refile these claims in state court.

However, to the extent that the Hon. Paul A. Crotty, on review, disagrees with my

analysis with respect to the outside sales exemption and finds that Plaintiff's FLSA claim should

survive summary judgment, I briefly address each of Plaintiff's remaining claims under state law

below.

### III.   *NYLL Retaliation*

NYLL § 215(1)(a) provides, in relevant part, that: "[n]o employer or his or her agent . . . shall discharge . . . or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . ." To establish a *prima facie* case under this section of the statute, a plaintiff must show that, while employed, he made a complaint about the employer's violation of the law and that, as a result of that complaint, the plaintiff was subjected to an adverse employment action. *Higueros v. New York Sate Catholic Health Plan, Inc.*, 630 F. Supp. 2d 265, 269 (E.D.N.Y. 2009). "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011) (citations omitted). The plaintiff can counter any asserted legitimate, nondiscriminatory rationale for the adverse action with evidence that the employer's justification is pretextual. *Id.* "[P]laintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not [retaliation] was the real reason for the employment action." *Mullins v. City of New York*, 626 F.3d 47, 53-54 (2d Cir. 2010).

In this case, Plaintiff complained to Tevrow about not being paid for his non-sales work and for being misclassified as a 1099 worker. Defendants do not dispute that Plaintiff lodged those complaints or that Plaintiff can establish a *prima facie* case for retaliation. Instead, Defendants offer two legitimate, nondiscriminatory reasons for Plaintiff's termination: insubordination and poor performance and argue that no reasonable juror could conclude,

based on the undisputed evidence, that these reasons are a pretext for retaliation.

A.  *Insubordination and Poor Performance – Legitimate Reasons for Discharge*

Defendants assert that Plaintiff was insubordinate on September 20, 2017, just two days

prior to Plaintiff's termination. As noted above, on that date Plaintiff was driving Tevrow on the

way back from a business meeting. Apparently, Plaintiff and Tevrow got into an argument

about the meeting while driving and Plaintiff kicked Tevrow out of the car, leaving Tevrow and a

co-worker stranded on the West Side Highway in New York City. (*See* Counter 56.1 ¶ 40.)

According to Plaintiff, EMS had recently lost a major client and Plaintiff scheduled a

meeting with that client's new corporate chef to try and regain the account. (Tortorici Dep.

252:3-253:15.) Tevrow insisted on attending that meeting (*id.,*) and showed up with another

EMS salesperson. (*Id.* at 255:2-10.) During the meeting, Tevrow ordered Plaintiff to deliver a

sample of salmon, via subway, to the client's midtown location. (*Id.* at 255:17-256:8.) After the

meeting concluded, Plaintiff was then directed to drive Tevrow and the other EMS salesperson

to the Port Authority. (*Id.* at 257:25-258:5.) While driving, Tevrow started shouting at Plaintiff

and Plaintiff responded by telling both Tevrow and the other individual to get out of his car. (*Id.*

at 258:6-259:2.) Plaintiff concedes that he told both Tevrow and the salesperson to exit his car

and that both, in fact, were left stranded on the highway. (*Id.*)

Shortly thereafter, Tevrow sent Plaintiff a text message stating that Tevrow wasn't sure

he could continue working with Plaintiff, essentially, because Plaintiff refused to follow

instructions. (Tevrow Aff., Ex. 7.)

Defendants contend that Plaintiff also was fired because of his consistently poor

performance over the course of his employment with EMS. The parties agree that Tevrow sent

17

multiple emails to Plaintiff throughout 2017 citing Plaintiff's subpar performance. (*See* Tevrow Aff., Exs. 3, 5, 6; Counter 56.1 ¶ 37) (communications consistently criticizing Plaintiff's sales numbers and effort). These criticisms culminated in Tevrow's September 22, 2017 email terminating Plaintiff's employment in light of Plaintiff's "results," the "continuous static between [Plaintiff and Tevrow]," and "dissatisfaction regarding [Plaintiff's] performance." (Tevrow Aff., Ex. 8.)

The Court is satisfied that this evidence, uncontroverted by either party, establishes that EMS had a legitimate, non-discriminatory reason for terminating Plaintiff—performance. *See Tubo v. Orange Reg'l Med. Ctr.*, 690 Fed. App. 736, 740 (2d Cir. 2017) (summary order) (finding that poor performance was a legitimate, non-retaliatory reason for a termination under Title VII).[5] The poor relationship between Plaintiff and Tevrow is another legitimate reason to terminate employment, evidenced by the reference to "continuous static" in the termination email. (*See* Tevrow Aff., Ex. 8.)[6]

*B. Pretext*

With Defendants having sustained their burden of articulating a legitimate reason for terminating Plaintiff's employment, Plaintiff must offer sufficient evidence that would allow a reasonable jury to find that the legitimate reason proffered by Defendants – in this case, poor performance – was false and that retaliation, more likely than not, was the real reason for the termination.

---

[5] FLSA and NYLL retaliation claims are analyzed using the same three-step burden shifting framework that applies to Title VII and NYSHRL retaliation claims. *See Mullins*, 626 F.3d at 53.

[6] The parties dispute whether "static" equates to insubordination and whether insubordination was a factor in the termination decision. Nevertheless, both parties agree there were interpersonal problems between Plaintiff and Tevrow.

Here, Plaintiff acknowledges that his sales numbers were lower in 2017 than in prior years – both in terms of customer acquisition and customer retention. (Tortorici Dep. 98:14-99:9.) However, Plaintiff attributes his customer acquisition struggles in 2017 to EMS's change in credit terms; that is, Plaintiff alleges that EMS started requiring payment from its customers 14 days after purchase instead of the traditional 30-day time frame, which, Plaintiff asserts, inhibited him from finding new clients. (*Id.* at 99:10-101:15.) Furthermore, Plaintiff attributes his inability to retain customers in 2017 to the poor quality of EMS's fish. (*Id.* at 101:2-10.) Finally, Plaintiff argues that his numbers were particularly low because he was fired before the busy fall season for fish sales. (ECF No. 81 at 6-7.) Therefore, Plaintiff argues, his sales numbers could have rebounded in the final months of 2017 but for his termination.

Even assuming that these obstacles and the timing of Plaintiff's termination caused Plaintiff's poor performance, Plaintiff has still not presented any evidence showing that Defendants' proffered reason for the termination was false or not the real reason for his termination. As noted, Plaintiff concedes that his sales numbers were down in 2017. (Tortorici Dep. 98:14-99:9) ("Year four was a little rocky . . . I think I lost quite a bit of customers"). He also concedes that Tevrow criticized his poor sales numbers. From there, Plaintiff merely attempts to justify his poor performance. While those explanations help explain Plaintiffs' sales struggles, they do not demonstrate the falsity of Defendants' legitimate, non-retaliatory reason for his termination. *Woods v. Newburgh Enlarged City Sch. Dist.*, 288 Fed. App. 757, 760-61 (2d Cir. 2008) (summary order) (affirming grant of summary judgment on retaliation claim because excuses justifying poor performance do not adduce evidence indicating the falsity of a proffered non-discriminatory reason for a discharge). Similarly, Plaintiff does not dispute that

there was friction between him and his boss or that he left his boss and a co-worker stranded on the Westside Highway two days before he was terminated. To the extent Defendants rely in part on the poor interpersonal relationship between Plaintiff and his boss as a basis for terminating Plaintiff's employment, as indicated in the termination letter, there is no factual basis to discredit this reason.

Furthermore, and as noted above, Plaintiff bears the burden of showing that Defendants' proffered rationale for his termination was pretext for retaliation. Here, Plaintiff appears to rely solely on the timing of his termination to establish pretext. This is insufficient to defeat summary judgment on the issue of pretext. *See Philpott v. State Univ. of N.Y.*, 805 Fed. App. 32, 34 (2d Cir. 2020) (summary order) ("[t]emporal proximity between Philpott's complaints of discrimination and his termination is insufficient, standing alone, to carry his burden to show pretext"); *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext"). Also, insofar as Plaintiff alleges that his complaints about pay were made as early as 2014 and his employment was not terminated until years later, this timing belies retaliatory motive.

Accordingly, I recommend that Defendants' motion for summary judgment be granted with respect to Plaintiff's retaliation claim under NYLL § 215 as Plaintiff produced no evidence (other than temporal proximity) to show that the proffered reason for his discharge was false and/or pretextual.

## IV.    *Hostile Work Environment*

Traditionally, claims for hostile work environment brought under Title VII and the NYSHRL have been "governed by the same standard." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citation omitted). Under that standard, in order to survive summary judgment on a hostile work environment claim, a plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (cleaned up); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000).

A hostile work environment may be shown in one of two ways: "a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir. 2000) (quoting *Cruz*, 202 F.3d at 570 (internal quotation marks omitted)). Isolated remarks are insufficient to sustain a hostile work environment claim. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999); *accord Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 58 (2d Cir. 2004). Whether a work environment is objectively hostile depends on: "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and 4) whether the conduct unreasonably interferes with the employee's work

performance." *Brennan*, 192 F.3d at 319 (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)). Where reasonable jurors could disagree as to whether alleged incidents of sex-based insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law. *See, e.g.*, *Whidbee*, 223 F.3d at 71.

On October 11, 2019, amendments to the NYSHRL came into effect that eliminated the 'severe and pervasive' standard. N.Y. Exec. Law § 300. The new standard requires a plaintiff to show that he or she was subjected to inferior terms, conditions, or privileges of employment because of the individual's membership in one or more protected categories. Indeed, the new standard is similar to the standard for stating a hostile work environment claim under the NYCHRL, discussed below. However, the amendment to the NYSHRL is not retroactive, meaning that the "severe and pervasive" standard still applies to claims arising from conduct predating the effective date of the amendments. *McHenry v. Fox News Network, LLC*, No. 19-cv-11294 (PAE), 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020). Because Plaintiff's claims are based on conduct that occurred in 2017 and years prior, the Court applies the "severe and pervasive standard" to Plaintiff's NYSHRL hostile work environment claim.

As noted, the "severe and pervasive" standard does not apply to hostile work environment claims under the NYCHRL. Rather, under the NYCHRL a Plaintiff need only demonstrate that he was treated "less well" than other employees because of his protected characteristic—in this case, his gender. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009) (holding federal "severe and pervasive" standard does not apply to claims under

the NYCHRL; rather, "liability should be determined by the existence of unequal treatment"). That said, "summary judgment is still available where the defendant can prove that the alleged discriminatory conduct in question could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences." *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 340 (S.D.N.Y. 2010) (cleaned up). Isolated incidents of unwelcome verbal and physical conduct have been found to constitute the type of petty slights and trivial inconveniences that are not actionable, even under the more liberal NYCHRL standard. *E.g. Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 505-06 (S.D.N.Y. 2010).

Under both the NYSHRL and the NYCHRL, a plaintiff must establish that he suffered a hostile work environment *because* of his gender. *See Margherita v. FedEx Exp.*, 511 Fed. App. 71, 72 (2d Cir. 2013) (summary order) (finding there was no evidence that plaintiff suffered a hostile work environment because of his protected status "even under the broad and liberal construction of the NYCHRL"); *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-cv-1459 (JMF), 2013 U.S. Dist. LEXIS 27832, at *23 (S.D.N.Y. Feb. 28, 2013) (dismissing plaintiff's NYCHRL hostile work environment claim on summary judgment because the plaintiff had failed to show that any incidents were based on animus directed towards plaintiff's protected class rather than "[p]ersonal animus").

I analyze the claims under both statutes below.

A. *NYCHRL*

Plaintiff cites to approximately six separate instances of allegedly hostile treatment that form the basis for his hostile work environment claim. Three of the six instances involved Tevrow telling Plaintiff about his sex life, or lack thereof, with his wife. (Reply 56.1 ¶¶ 56-58.)

The three other instances were: (1) Tevrow commented on a restaurant hostess's breasts while at a work lunch (Reply 56.1 ¶ 59); (2) Tevrow told Plaintiff that he once "fucked the shit out of" a girl in a restaurant bathroom (Reply 56.1 ¶ 60); and (3) Tevrow once told Plaintiff to "suck his dick." (Reply 56.1 ¶ 61.) Plaintiff could not recall the precise dates on which Tevrow made the above comments, but recalled generally that they took place sometime in 2015 and 2016. (Tortorici Dep. 303:13-313:11.)

Tevrow denies having made these comments. However, the Court will assume that all of the comments were made for the purposes of the Court's analysis on summary judgment. Indeed, even assuming that Tevrow made all of these comments, Plaintiff has not adduced any evidence to demonstrate that he was treated unequally well because he was a man. In other words, Plaintiff does not point to any evidence that reasonably suggests that Tevrow targeted these comments at Plaintiff because of Plaintiff's gender.

While the statements at issue are certainly lewd and inappropriate, they do not implicitly target Plaintiff on the basis of his gender. Accordingly, a reasonable jury could not find that Tevrow subjected Plaintiff to a gender-based hostile work environment under the NYCHRL. The relevant case law from this Circuit supports that conclusion. *See Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 453 (E.D.N.Y. 2013) (granting summary judgment on NYCHRL hostile work environment claim because the defendant's inappropriate comments and actions, while difficult to deal with, did not raise a genuine issue of fact as to whether the plaintiff was discriminated against *because* of her gender); *see also Leizerovici v. HASC Ctr., Inc.*, No. 17-cv-3605 (BMC), 2018 U.S. Dist. LEXIS 31640, at *30-31 (E.D.N.Y. 2018) (dismissing gender-based hostile work environment claim under the NYCHRL on a motion to dismiss

because the defendant's comments, while sexually explicit and vulgar, were not driven by a discriminatory animus against plaintiff's protected characteristic); *Magnoni*, 701 F. Supp. 2d at 505-06 (holding, after a bench trial, that even assuming the defendant told plaintiff crude anecdotes about his sex life with another woman, occasionally referred to the plaintiff as voluptuous, and occasionally knocked her knee, those allegations were insufficient to state a claim under the NYCHRL).

Accordingly, I recommend that Plaintiff's hostile work environment claim under the NYCHRL be dismissed.

### B. NYSHRL

The standard for evaluating Plaintiff's NYSHRL hostile work environment claim in this case is subject to a higher standard than the NYCHRL claim. *Russo*, 972 F. Supp. 2d at 454. Therefore, because Plaintiff cannot sustain a claim pursuant to the more liberal NYCHRL standard, Plaintiff's hostile work environment claim under the NYSHRL also fails.

Accordingly, I also recommend that Plaintiff's hostile work environment claim under the NYSHRL be dismissed.

## V.    *Failure to Provide Proper Wage Statements*

NYLL § 195(3) provides that every employer shall "furnish each employee with a statement with every payment of wages, listing" various categories of information including: the dates of work covered by that payment, the rate of pay, and the name of the employee and the employer, along with other similar information. Defendants acknowledge that they failed to provide proper wage statements under Section 195(3) but assert the affirmative defense that they always paid Plaintiff the wages he was due in a timely manner. Thus, Defendants

argue, pursuant to NYLL § 198(1-d), they cannot be held liable for their failure to provide wage statements.[7]

Plaintiff counters, claiming that this affirmative defense was not available prior to February 27, 2015. However, based on the Court's review of the archived versions of NYLL § 198(1-d), it appears that the affirmative defense cited by Defendants was in effect during the relevant period. *See* NYLL § 198(1-d) (2012). Thus, there is no merit to Plaintiff's argument. Therefore, given that Plaintiff concedes that he was always paid on time (Counter 56.1 ¶ 33,) I recommend that Plaintiff's claim under NYLL § 195(3) be dismissed.

### Conclusion

For the foregoing reasons, I respectfully recommend that Defendants' motion for summary judgment (ECF No. 78) be GRANTED in its entirety.

Date: June 28, 2021
        New York, New York

Respectfully submitted,

KATHARINE H. PARKER
United States Magistrate Judge

---

[7] NYLL § 198(1-d) provides, in relevant part, that "[i]n any action or administrative proceeding to recover damages for violation of subdivision three of section one hundred ninety-five of this article, it shall be an affirmative defense that . . . the employer made complete and timely payment of all wages due pursuant to this article or articles nineteen or nineteen-A of this chapter to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article."

## NOTICE

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or

(F) (other means consented to by the parties)).

If Plaintiff files written objections to this Report and Recommendation, the Defendants may respond to Plaintiff's objections within fourteen days after being served with a copy. Fed.

R. Civ. P. 72(b)(2). Alternatively, if Defendants file written objections, Plaintiff may respond to such objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).